UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MELINDA BOOTH DOGRA, as Assignee of Claims of SUSAN HIROKO LILES; JAY DOGRA, as Assignee of the Claims of SUSAN HIROKO LILES,<br><br>            Plaintiffs,<br>    vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>            Defendant. | Case No.: 2:14-cv-01841-GMN-GWF<br><br>**ORDER** |

Pending before the Court is the Partial Motion for Summary Judgment filed by Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual"). (ECF No. 25). Plaintiffs Melinda Booth Dogra and Jay Dogra ("Plaintiffs") filed a response, (ECF No. 28), and Liberty Mutual filed a reply, (ECF No. 29).[1]  For the reasons discussed below, Liberty Mutual's Motion for Summary Judgment is **GRANTED**.

**I.      BACKGROUND**

This case arises from a series of disputes related to a car accident that took place in Clark County, Nevada on August 22, 2008. (Compl. ¶ 10, ECF No. 1).  The accident occurred when Susan Hiroko Liles ("Liles") drifted from her lane and collided with an adjacent vehicle, causing injury to multiple individuals, including Plaintiffs in the instant action. (*Id.* ¶ 11).  At the time of the accident, Liles was a covered driver on an automobile insurance policy (the

---

[1] In addition, Plaintiffs filed a Motion for Leave to File a Surreply, (ECF No. 30), and Liberty Mutual Responded in opposition, (ECF No. 31). For good cause appearing, the Court grants Plaintiffs' Motion, considers Plaintiffs' Surreply, and also considers Liberty Mutual's response.

"Policy") provided by Liberty Mutual. (*See* Policy, Ex. 1 to Def.'s MSJ, ECF No. 25-1). The Policy contained limits of $100,000 per claim and $300,000 per accident. (*Id.*).

On November 25, 2008, Liberty Mutual filed an Interpleader Complaint in Clark County District Court ("Clark County Court"), asserting its position that Liles' potential liability exceeded the policy limits. (*See* Interpleader Compl., Ex. 2 to Def.'s MSJ, ECF No. 25-2). On November 17, 2009, Liberty Mutual filed a Motion for Summary Judgment and Disbursement of Funds. (Interpleader MSJ, Ex. 10 to Pls.' Resp., ECF No. 28-10). In that motion, Liberty Mutual proposed a distribution where one of the injured parties would receive $160,500. (*Id.*). Multiple claimants opposed the motion for suggesting a distribution in excess of the $100,000 per claim policy limit. (*See* Opposition to Interpleader MSJ, Ex. 11 to Pls.' Resp., ECF No. 28-11). The Clark County Court deferred ruling on the motion, as it was unclear at the time whether one of the claimants, Melinda Hespen, should remain a party to the action. (*See* Interpleader Hearings, Exs. 15, 16 to Pls.' Resp., ECF Nos. 28-15, 28-16).

On April 13, 2010, Liberty Mutual filed a Motion to Deposit Funds with the Clark County Court and sought to be discharged from further liability. (Mot. to Deposit, Ex. 3 to Def.'s MSJ, ECF No. 25-3). The Clark County Court granted this motion and directed claimants to agree upon a distribution of the policy proceeds. (Order, Ex. 4 to Def.'s MSJ, ECF No. 25-4). The claimants provided the Clark County Court with an agreed upon distribution on January 6, 2011. (*See* Status Hearing, Ex. 18 to Def.'s Reply, ECF No. 29-18). However, by this time, multiple parties had commenced individual lawsuits against Liles, including Plaintiffs in the instant action. (*Id.*) Ultimately, Plaintiffs received a jury verdict against Liles for $2,945,604.48 in favor of Melinda Booth Dogra and $42,840.75 in favor of Jay Dogra. (Judgements, Exs. 5, 6 to Def.'s MSJ, ECF Nos. 25-5, 25-6).

After discussion with her independent counsel, Liles decided against appealing this verdict, purportedly due to a financial inability to post the approximately $2.9 million appeal

bond and a desire to "move on." (*See* Counsel Email, Ex. 7 to Def.'s MSJ, ECF No. 25-7).  On August 4, 2014, Liles assigned all potential rights and claims she had against Liberty Mutual to the Plaintiffs in this action. (Assignment, Ex. 9 to Def.'s MSJ, ECF No. 25-9).  Shortly thereafter, Plaintiffs initiated this case in federal court, alleging four causes of action against Liberty Mutual: (1) Breach of Contract; (2) Breach of Duty of Good Faith and Fair Dealing and Fiduciary-like Duties; (3) Breach of Unfair Claims Practices Act; and (4) Punitive Damages. (Compl., ECF No. 1).  On November 25, 2015, Liberty Mutual filed the instant Motion for Partial Summary Judgement on Plaintiffs' breach of contract claim. (ECF No. 25).

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

To establish a breach of contract claim, a plaintiff must show that: (1) there was a valid contract; (2) the defendant breached the terms of the contract; and (3) the plaintiff suffered damages as a result of the breach. *See Brown v. Kinross Gold U.S.A., Inc.*, 531 F.Supp.2d 1234, 1240 (D. Nev. 2008).  In general, courts "should not rewrite contract provisions that are otherwise unambiguous." *Id.*; *see also Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990) ("[C]ontracts will be construed from the written language and enforced as written.").  In Nevada, contractual construction is a question of law and "suitable for determination by summary judgment." *Ellison*, 797 P.2d at 977.  When analyzing an insurance contract, "[p]olicy terms should be viewed in their plain, ordinary and popular connotations." *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986).

Plaintiffs present a number of arguments to support their breach of contract claim, including that Liberty Mutual: (1) unreasonably delayed payments and failed to settle when given the opportunity; (2) failed to provide an unbiased defense; and (3) failed to pay premiums on appeal bonds.  The Court finds that these arguments, along with the evidence presented, do not establish a genuine issue of material fact that Liberty Mutual breached the express terms of the insurance policy or a contractual duty arising from the agreement.

### A.   Delaying Payments and Failure to Settle

Plaintiffs argue that Liberty Mutual "should have paid Ms. Dogra a full one person policy limit relatively soon after the collision." (Pls.' Resp. 13:20–21, ECF No. 28).  In Nevada, an insurer's right to control settlement discussions arises from the contract. *See Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324–25 (Nev. 2009).  Here, the Policy provides that Liberty Mutual "will settle or defend, *as we consider appropriate*, any claim or suit asking for

[covered] damages." (Policy, Ex. 1 to Def.'s MSJ 9) (emphasis added).  Given the number of claimants and extent of potential liability, Liberty Mutual found it appropriate to initiate an interpleader action, rather than attempt to settle on an individual basis. (*See* Def.'s Reply, 2:20–22, ECF No. 29).  Thus, the Court finds Liberty Mutual did not breach the contract by forgoing a separate payment to Ms. Dogra.

Plaintiffs further argue that Liberty Mutual delayed payments by proposing a distribution in its Interpleader Motion for Summary Judgment that was contradictory to the $100,000 per person limit. (Pls.' Resp. 18:5–7).  While Liberty Mutual did initially suggest a distribution in conflict with the claim limit, it also stated that it was "unable to legally determine" the allocation amount. (*See* Interpleader MSJ, Ex. 10 to Pls.' Resp.).  Once the claimants opposed the distribution, Liberty Mutual replied that it had "no qualms with the Court disbursing the funds as it sees fit." (*See* Reply to Opposition, Ex. 13 to Pls.' Resp., ECF No. 29-13).  Ultimately, neither the Clark County Court nor the claimants relied on Liberty Mutual's initial proposal in arriving at a distribution in accordance with the policy limits. (*See* Status Hearing, Ex. 18 to Def.'s Reply).  Therefore, the Court finds Liberty Mutual's mere initial proposal does not give rise to a breach of contract claim.

Plaintiffs additionally assert that Liberty Mutual's failure to promptly deposit the insurance limits with the Clark County Court "is the sole reason Ms. Liles was sued, went to trial twice, and has a multi-million dollar judgment filed against her." (Pls.' Resp. 20:24–25).  However, Plaintiffs have failed to identify a provision in the insurance contract that required Liberty Mutual to abide by any particular timeframe in depositing funds.  To the extent Plaintiffs argue Liberty Mutual breached a more general contractual duty to defend by not deposing funds sooner, the Court remains unpersuaded.  The record suggests that any delays were due to both the Clark County Court's initial reluctance to extinguish Melinda Hespen's claim and the claimants' own inability to agree upon a distribution. (*See* Interpleader Hearings,

Exs. 13-16 to Def.'s Reply). Beyond conclusory assertions, Plaintiffs have not sufficiently demonstrated that depositing the funds sooner would have prevented the separate judgements against Liles.

Accordingly, the Court finds that even drawing all inferences in favor of Plaintiffs, no genuine issue of material fact exists as to Plaintiffs' breach of contract claim regarding Liberty Mutual's alleged delayed payments and failure to settle.

### B. Failing to Provide an Unbiased Defense

Plaintiffs argue that Liberty Mutual breached the insurance contract by permitting the law firm Barron & Pruitt to defend both Liberty Mutual in the interpleader action and Liles in the subsequent lawsuit the Dogras filed against her. (*See* Pls.' Resp. 14:5–7). However, Plaintiffs fail to indicate any provision of the insurance contract that dictates separate counsel for the insurer and insured. In Nevada, joint representation of an insured and insurer is permissible so long as no actual conflict exists. *See State Farm Mut. Auto. Ins. Co. v. Hansen*, 357 P.3d 338, 343 (2015). If a conflict does arise, then an insurer must provide the insured with independent counsel. *See id.* at 339. Here, Liles' and Liberty Mutual's interests were aligned until Plaintiffs offered to release Liles from liability in exchange for an assignment of rights against Liberty Mutual. After this conflict arose, Liberty Mutual retained different counsel for its interpleader action and retained independent counsel for Liles. (*See, e.g.*, Counsel Email, Ex. 7 to Def.'s MSJ). Accordingly, the Court finds Liberty Mutual did not breach the contract in its handling of the joint representation.

### C. Failing to Pay Premiums on Appeal Bonds

Plaintiffs argue that Liberty Mutual breached its contract with Liles by failing to pay the premiums on an appeal bond after the jury verdict against her. (Pls.' Resp. 14:10–16). Specifically, Plaintiffs assert that Liberty Mutual "failed to indicate who was responsible for furnishing the bond." (*Id.* 15:23–24). Thus, Plaintiffs believe that Liberty Mutual had an

implicit duty to both furnish the appeal bond and thereafter pay premiums on the bond. (*Id.* 15:24–25).

In general, an insurer's duties are dictated by the terms of its contract with the policyholder. *See Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 621 (Nev. 2011).  As such, an insurer is free to contractually limit these duties, so long as the policy's language is unambiguous. (*Id.*).  Determining whether a policy's language is ambiguous turns on whether it creates "reasonable expectations of coverage as drafted." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1157 (Nev. 2004).

Here, the Policy provides that Liberty Mutual would pay "[p]remiums on appeal bonds and bonds to release attachments in any suit we defend." (*Id.*).  Nowhere in the Policy does it indicate that Liberty Mutual would also cover the furnishing of any underlying bonds.  Plaintiffs' assertion that an implicit duty to furnish the approximately $2.9 million bond should be read into the contract is therefore contrary to any reasonable expectations of coverage. *See Am. Excess Ins. Co.*, 729 P.2d at 1354.

Accordingly, the Court finds that Plaintiffs have failed to establish that Liberty Mutual breached the terms of its insurance contract.  Liberty Mutual is therefore entitled to summary judgment on this claim.

### IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Liberty Mutual's Motion for Summary Judgment on Plaintiffs' Breach of Contract Claim, (ECF No. 25), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Surreply, (ECF No. 30), is **GRANTED**.

/ / /

/ / /

**IT IS FURTHER ORDERED** that the parties shall file a Joint Pretrial Order regarding the remaining claims by November 9, 2016.

**DATED** this __23__ day of September, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge