**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MELINDA BOOTH DOGRA, as Assignee of the Claims of SUSAN HIROKO LILES; JAY DOGRA, as Assignee of the Claims of SUSAN HIROKO LILES, | Case No. 2:14-cv-01841-GMN-GWF |
| Plaintiffs, | |
| vs. | **ORDER** |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | |
| Defendant. | |

This matter is before the Court on Plaintiffs' Motion to Compel Unredacted Copies of Documents Contained in Defendant's First Supplemental Disclosure Statement Pursuant to FRCP 26 and Copies of Certain Depositions (ECF No. 42), filed on September 23, 2016. Defendant filed its Opposition (ECF No. 47) on October 10, 2016 and Plaintiffs filed their Reply (ECF No. 50) on October 20, 2016. The Court conducted a hearing in this matter on October 24, 2016.

**BACKGROUND**

On August 22, 2008, Susan Liles was involved in a multi-car automobile accident. Ms. Liles was insured under an automobile liability insurance policy issued by Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual"). The insurance policy provided bodily injury damage limits of $100,000 per person and $300,000 per accident. The individuals injured in the accident, including Plaintiffs Melinda Booth Dogra and Jay Dogra ("the Dogras"), asserted bodily injury claims against Susan Liles. After some investigation, Liberty Mutual filed an action to interplead the $300,000 per accident policy limits and have them apportioned among the claimants. At one point, Liberty Mutual

proposed that $160,000 be paid to claimant Jessica Flores.  The other claimants objected and the court ultimately ordered that the policy proceeds be apportioned so that no one individual was allocated more than $100,000 of the policy proceeds.

Although Liberty Mutual moved to deposit the policy proceeds into court, they were not so deposited.  The Dogras allegedly notified Liberty Mutual that they would accept $100,000 in full settlement of their claims if the policy proceeds were deposited into court before the Dogras were required to file a lawsuit to prevent the running of the statute of limitations.  Liberty Mutual deposited the funds after the Dogras and other claimants filed suit against Ms. Liles.  The other claimants accepted their shares of the policy proceeds and dismissed their lawsuits.  The Dogras, however, refused to settle for the $100,000 per person policy limit and they eventually proceeded to trial against Ms. Liles.  Melinda Booth Dogra obtained a judgment of $2,945,604.48 and Jay Dogra obtained a judgment of $42,840.75.  Ms. Liles subsequently dismissed her appeal from the judgments and assigned her rights against Liberty Mutual to the Dogras in exchange for a covenant not the execute.

The Dogras, as assignees of the rights of Susan Liles, filed this action against Liberty Mutual on November 13, 2014.  *Complaint (ECF No. 1)*.  The Dogras alleged causes of action for breach of contract, breach of the covenant of good faith and fair dealing ("insurance bad faith") and violation of the Nevada Unfair Claims Practices Act, NRS 686A.310.  The Dogras also alleged a claim for punitive damages.  *Id.*  In their cause of action for breach of contract, the Dogras alleged that Liberty Mutual breached numerous contractual duties owed to Ms. Liles, including "fail[ing] to attempt to enter into settlement negotiations before or after filing of the Interpleader and before the running of the statute of limitations."  *Id. at pg. 15*, ¶ 64.  In their causes of action for insurance bad faith and violation of the unfair claims practices act, the Dogras likewise alleged that Liberty Mutual breached a number of duties owed to Ms. Liles, including the duty to attempt to obtain settlement within the available policy limits.  *Id. at pg. 20-23* ¶¶ 76, 77, 83.

On November 15, 2015, Liberty Mutual filed a motion for summary judgment on Plaintiffs' breach of contract claims.  *Motion for Summary Judgment (ECF No. 25)*.  Liberty Mutual based its motion on Plaintiffs' answer to Defendant's Interrogatory No. 8 which asked Plaintiffs to "identify each and every provision of the Policy which you allege Liberty Mutual has breached."  *Id. at pg. 5.*

1   Plaintiffs responded to this interrogatory by stating that Liberty Mutual "breached several provisions of

2   its insurance policy with its insured.  These include, but are not limited to: . . ." *Id.*  Plaintiffs then

3   listed the following contractual duties that Defendant breached: (a) failing to pay appeal bond

4   premiums, (b) proposing an allocation of the policy proceeds in the interpleader action that would have

5   paid a claimant more than $100,000, and (c) failing to timely deposit the policy proceeds in court.  *Id.*

6   Liberty Mutual took the position that based on their answer to Interrogatory No. 8, Plaintiffs "have

7   abandoned any breach of contract claims save [the three listed breaches]." *Id. at pg. 6.*  Liberty Mutual

8   argued that it had not breached its contractual duties with respect to the three alleged breaches. *Id. at*

9   *pgs. 6-10.*  In their opposition, Plaintiffs denied that they had abandoned any of their breach of contract

10  claims.  *Opposition (ECF No. 28), pgs. 12-15.*  Plaintiffs argued that Defendant's breaches included:

11  (1) unreasonable delay in payment, (2) failure to provide an unbiased defense, (3) failure to pay

12  premiums on appeal bonds, and (4) failure to pay the limits of liability when given the opportunity to

13  settle. *Id. at pgs. 13-23.*  In its reply, Liberty Mutual noted that Plaintiffs "belatedly attempt to rewrite

14  their discovery responses to resurrect abandoned contract claims." *Reply (ECF No. 29), pg. 1.*[1]

15        On September 27, 2016, the Court granted Liberty Mutual's motion for summary judgment,

16  stating as follows:

> Plaintiffs present a number of arguments to support their breach of
> contract claim, including that Liberty Mutual: (1) unreasonably delayed
> payments and failed to settle when given the opportunity; (2) failed to
> provide an unbiased defense; and (3) failed to pay premiums on appeal
> bonds.  The Court finds that these arguments, along with the evidence
> presented, do not establish a genuine issue of material fact that Liberty
> Mutual breached the express terms of the insurance policy or a
> contractual duty arising from the agreement.

*Order (ECF No. 44), pg. 2.*

The Court ordered the parties to file a joint pretrial order on the remaining claims. *Id. at pg. 9.*

---

[1] Plaintiffs filed a surreply in which they argued that Liberty Mutual had a duty to defend Ms. Liles against the Dogras' lawsuit even after it tendered its policy limits, and disputed Liberty Mutual's assertion that the claims did not settle before the running of the statute of limitations because the claimants could not agree on how the liability proceeds should be distributed.  *Surreply (ECF No. 30-1).*  Liberty Mutual filed a response to the surreply in which it disputed Plaintiffs' assertions.  *Response (ECF No. 31-1).*  In its order granting summary judgment, the Court also granted leave to file the surreply and the response thereto.  *Order (ECF No.44), pg. 1, n.1.*

On October 21, 2016, Liberty Mutual filed a motion for summary judgment on Plaintiffs' remaining claims. *Motion for Summary Judgment (ECF No. 52)*. Defendant argues that "[t]o the extent Plaintiffs' bad faith claims are premised upon the investigation of the claim, the settlement negotiations, the interpleader action, and the time of depositing policy proceeds with the state court, there likewise is no genuine issue of material fact that has not already been determined by this Court. *See id.* Stated another way, Liberty Mutual cannot be liable for bad faith as a matter of law in the absence of a breach of contract." *Id. at pg. 6*. Plaintiffs have not yet filed their response to this motion.

On October 25, 2016, Plaintiffs moved for leave to file a motion for reconsideration of Order (ECF No. 44). *Motion for Leave to File Motion for Reconsideration (ECF No. 55)*. In their proposed motion for reconsideration, Plaintiffs argue that Defendant filed its first motion for summary judgment before discovery was completed. While that motion was pending, the depositions of the Dogras' attorneys and the attorneys who represented the other claimants were taken. Plaintiffs argue that the depositions show that the Dogra's counsel informed Liberty Mutual's counsel that if the policy limits were deposited into court before the Dogras had to file a lawsuit to prevent the statute of limitations from running, they would accept their shares of the policy proceeds in full settlement of their claims. Plaintiffs also cite the testimony of the Dogras' attorney, Gerald McDermott, that Melinda Dogra would have accepted the $100,000 per person limit in full settlement of her claim if it had been offered before she filed suit. Plaintiffs argue that this testimony establishes that Defendant breached its duty to timely deposit the policy proceeds into court and to settle the Dogra's claims against Ms. Liles within the policy limits. Plaintiffs therefore request that the Court reconsider and set aside the order granting summary judgment on their breach of contract claims. *Proposed Motion for Reconsideration (ECF No. 55-1)*.

Discovery in this action closed on July 11, 2016. The deadline to file dispositive motions expired on August 10, 2016. *Order on Stipulation (ECF No. 27)*. On June 14, 2016, the parties stipulated to extend the time for taking certain depositions, but did not otherwise request an extension of the discovery deadline. *Order on Stipulation (ECF No. 38)*. Plaintiffs filed their instant motion to compel on September 23, 2016—more than two months after discovery closed and more than one month after the deadline for filing dispositive motions. The motion to compel, however, was filed four

1   days before Order (ECF no. 44) was entered.  As discussed above, that order has engendered

2   Defendant's filing of another motion for summary judgment and Plaintiffs' motion for leave to file a

3   motion for reconsideration.

4         Plaintiffs seek two things in their motion to compel.  First, Plaintiffs seek production of

5   unredacted copies of the billing records of the law firm of Barron & Pruitt relating to the interpleader

6   action from August 9, 2010 through August 29, 2010.  Barron & Pruitt represented Liberty Mutual in

7   the interpleader action and it subsequently represented Ms. Liles in the lawsuit brought against her by

8   the Dogras.  In support of this request, Plaintiffs state that in January 2016, they took the deposition of

9   the Dogras' former attorney Anastasia Noe.  Ms. Noe testified that she spoke with Barron & Pruitt

10  attorneys about the interpleader action in August 2009.  She further testified that a few days after an

11  August 10, 2010 hearing in the interpleader action, she told an attorney from Barron & Pruitt that the

12  policy proceeds had not yet been deposited with the court and needed to be deposited before the statute

13  of limitations ran.  Ms. Noe also allegedly "told the lawyers that the Dogras would be willing to accept

14  policy limits if the monies were deposited before the statute ran."  *Motion to Compel (ECF No. 42), pg.*

15  *4:15-18*.  Barron & Pruitt attorneys Karen Hanks and Jared Christensen testified at their depositions

16  that they either did not remember the alleged conversation with Ms. Noe or that the alleged

17  conversation did not occur.  They also testified that if they had spoken to Ms. Noe, it would be reflected

18  in their billing records. *Id. at pgs. 5:25 to 6:2.*  Plaintiffs argue that the Barron & Pruitt billing records

19  from August 9 to August 29, 2010 may contain entries documenting Ms. Noe' conversations with

20  Defendant's attorneys and may also indicate whether the attorneys informed Liberty Mutual of Ms.

21  Noe's statements.  Plaintiffs therefore request that Barron & Pruitt's unredacted billing records for this

22  time period be produced.

23        Defendant argues that Plaintiffs' request for the unredacted attorney billing records is irrelevant

24  because the Court has already granted summary judgment on the Plaintiffs' breach of contract claims,

25  which also precludes their claims for insurance bad faith or violations of the unfair claims practices act.

26  Second, Defendant argues that Plaintiffs' motion is untimely because it was filed after the discovery

27  cutoff date.  Defendant also argues that Plaintiffs did not serve formal requests for production of the

28  unredacted billing records until September 21, 2016, more than two months after the end of discovery.

1     *Opposition (ECF No. 47), pg.5:7-10; 5:23-24, 6:18-22; Appendix to Motion (ECF No. 48), Exhibit 2.*

2     Defendant notes that in an earlier order, the Court did not require Defendant to disclose Barron &

3     Pruitt's unredacted billing records for the period that preceded its representation of Ms. Liles' in the

4     bodily injury action. *Opposition (ECF No. 47), pg 5:23-24*.  Third, Defendant states that it offered to

5     produce the unredacted attorney billing records if Plaintiffs agreed to produce attorney Anastasia Noe's

6     contemporaneous notes regarding her communications with Barron & Pruitt attorneys.  Plaintiffs,

7     however, allegedly refused to produce Ms. Noe's notes.  Fourth, Defendant also objects to production

8     of the unredacted billing records to the extent they contain privileged attorney-client communications or

9     attorney work product.

10        Plaintiffs also seek an order authorizing them to obtain transcripts of three depositions given by

11     Defendant's insurance bad faith expert witness Paul Hamilton in other cases.  Defendant disclosed Mr.

12     Hamilton's prior trial and deposition testimony as required by Fed. R. Civ. P. 26(a)(2)(B)(v).

13     According to Plaintiffs, Mr. Hamilton primarily testifies on behalf of insurers, but testified on behalf

14     the insureds in the following cases:  (1) *Giannulli v. DWC General Contractors, et al.*, (California)

15     Superior Court, Riverside Indio Branch; (2) *Scarpa v. Travelers Property Casualty Company*, United

16     States District Court for the District of Nevada, and (3) *Liberty Mutual v. California Auto. Assigned*

17     *Risk Plan*, United States District Court for the Northern District of California.  Plaintiffs state that Mr.

18     Hamilton may have given testimony on the insurer's duty of good faith or on proper claims handling

19     practices that contradicts his testimony in this case and therefore constitutes impeachment evidence.

20        Defendant states that neither Mr. Hamilton nor Defendant have copies of the deposition

21     transcripts.  Defendant argues that the depositions are also irrelevant and that Plaintiffs' motion to

22     compel and request for production of the deposition transcripts are untimely.  Defendant further argues

23     that courts do not require production of transcripts of prior deposition testimony given by a party's

24     expert witness in other cases.  Defendant also states that Mr. Hamilton's depositions in other cases are

25     or may be subject to protective orders in those cases.

26                              **DISCUSSION**

27        Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

28     discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible in evidence to be discoverable."  The 2015 amendments to Rule 26(b) encourage trial courts to exercise their broad discretion to limit and tailor discovery to avoid abuse and overuse, and to actively manage discovery to accomplish the goal of Rule 1 to secure the just, speedy, and inexpensive determination of every action and proceeding.  *Roberts v. Clark County School District*, 312 F.R.D. 594, 601–04 (D. Nev. 2016).

Defendant argues that a bad faith claim cannot stand as a matter of law in the absence of a breach of contract.  *Opposition (ECF No. 47), pg. 7*, citing *Henderson v. Prop. & Cas. Co. of Hartford*, 2012 WL 3730533, *4 (D.Nev. Aug. 28, 2012) and *Cook v. United Serv. Auto Ass'n*, 169 F.R.D. 359, 261 (D.Nev. 1996).  While this statement is generally true, the law, not the insurance contract, imposes the covenant of good faith and fair dealing on an insurer.  *Allstate Insurance Company v. Miller*, 125 Nev. 300, 212 P.3d 318, 324 (2009).  A bad faith action can apply to more than just an insurer's denial or delay in paying a claim.  *Id.* at 325, citing *Guaranty Nat'l Ins. Co. v. Potter*, 112 Nev. 199, 206, 912 P.2d 267, 272 (1996).  An insurer's failure or refusal to settle a liability claim within the policy limits when it has an opportunity to do so, as well as its failure to adequately inform an insured of a settlement offer, may provide grounds for a bad faith claim.  *Id.*

The viability of Plaintiffs' claims for insurance bad faith and violation of the unfair claims practices act is uncertain.  In granting summary judgment, the Court held that Plaintiffs' arguments did not establish a genuine issue of material fact that Liberty Mutual breached the express terms of the insurance policy or a contractual duty arising from the agreement.  *Order (ECF No. 44), pg. 2.*  Because Plaintiffs only moved for summary judgment on the contract claims, the order did not reach the insurance bad faith and statutory violations claims.  Although Defendant has now moved for summary judgment on those claims, Plaintiffs also seek leave to file a motion for reconsideration of the summary judgment order on the contract claims.  It is possible that the Court will grant summary judgment and dismiss Plaintiffs' bad faith and statutory violation claims.  It is also possible that the Court will grant

1  reconsideration of its previous order and allow the breach of contract, bad faith and statutory violations

2  claims to proceed.

3      This Court could deny Plaintiffs' motion to compel pending the outcome of Defendant's new

4  motion for summary judgment and Plaintiffs' request for reconsideration.  Requiring Defendant to

5  produce the requested billing records at this time, however, will not be particularly burdensome or

6  prejudicial to Defendant even if Plaintiffs' claims are ultimately dismissed.  If Plaintiffs are allowed to

7  proceed with their lawsuit, the Barron & Pruitt's billing records, together with Ms. Noe's

8  contemporaneous notes, if they exist, could clarify what communications occurred between the parties'

9  counsel regarding the deposit of the policy proceeds or the settlement of the Dogras' claims.

10     Defendant also argues that Plaintiffs' motion to compel and requests for production of

11  documents are untimely.  In so far as the requests for production are concerned, they should have been

12  served at least 30 days before the discovery cutoff date.  *Christmas v. MERS*, 2010 WL 2695662,*2

13  (D.Nev. July 2, 2010), citing *Smith v. Principal Cas. Ins. Co.*, 131 F.R.D. 104, 105 (S.D.Miss. 1990)

14  and *Thomas v. Pacificcorp.*, 324 F.3d 1176, 1179 (10th Cir. 2003).  Plaintiffs served the requests for

15  production more than two months after the expiration of discovery.  The requests are clearly untimely

16  and need not be responded to.  However, Plaintiffs previously requested production of Barron &

17  Pruitt's billing records during discovery.  In regard to an earlier motion to compel by Plaintiffs, the

18  Court ordered Defendant to produce billing records for the time period in which Barron & Pruitt

19  represented Ms. Liles in the lawsuit filed against her by the Dogras, but did not order production of the

20  billing records for the period in which Barron & Pruitt solely represented Liberty Mutual in the

21  interpleader action.  *See Defendant's Opposition (ECF No. 47), pg. 5* and *Appendix (ECF No. 48),*

22  *Exhibit 3.*  Arguably, Plaintiffs' instant motion to compel production of Barron & Pruitt's unredacted

23  billing records can be considered a follow-up to its earlier motion.  *See Motion to Compel (ECF No.*

24  *14).*

25     In *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999), the court stated that a

26  motion to compel may be filed after the close of discovery, but should generally be filed before the

27  scheduled date for dispositive motions.  In *Days Inn Worldwide Inc. v. Sonia Investments*, 237 F.R.D.

28  395, 397 (N.D. Tex. 2006), the court identified several factors that courts should consider in

determining whether a motion to compel filed after the discovery deadline is untimely.  These include (1) the length of time since the expiration of the deadline, (2) the length of time the moving party has known about the discovery, (3) whether the discovery deadline has been extended, (4) the explanation for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed, (6) the age of the case, (7) any prejudice to party from whom the late discovery is sought, and (8) disruption of the court's schedule.  *Id.* at 237 F.R.D. at 398.

Most of the factors listed in *Days Inn* support a finding that Plaintiffs' motion to compel is untimely.  It was filed more than two months after the close of discovery and more than one month after the expiration of the dispositive motion deadline.  Plaintiffs' counsel should have recognized the potential relevance of the Barron & Pruitt's billing records at or about the time of Ms. Noe's deposition in January 2016.  Plaintiffs' explanation for the delay in filing the motion is not persuasive.  The discovery deadlines have been extended four times.  The factors favoring production of the unredacted billing records, even at this late date, is that they may help resolve the factual issue regarding communications between the Dogras' counsel, Ms. Noe, and the Barron & Pruitt attorneys.  The production of these records, in and of themselves, is not likely to effect the Court's decision on Defendant's pending motion for summary judgment or Plaintiffs' request for reconsideration of the summary judgment order on the contract claims.  Plaintiffs have already raised Ms. Noe's testimony and the testimony of the other claimants' attorneys as grounds for reconsidering Order (ECF No. 44).  They will no doubt assert that same testimony in opposition to Defendant's motion for summary judgment on the bad faith and statutory violation claims.  If Ms. Noe's testimony is material to whether Defendant breached its duties under the policy, then it should defeat summary judgment regardless of whether Defendant disputes the truthfulness of her testimony.

Also favoring production of the billing records is the fact that Defendant previously offered to produced the Barron & Pruitt billing records if Plaintiff agreed to produce Ms. Noe's records or notes regarding her alleged conversations with Barron & Pruitt.  As stated above, production of the attorneys' contemporaneous records or notes relating to their communications with each other serves the interests of justice.  Production of these records will not disrupt the Court's schedule.  The Court will therefore order Defendant to produce Barron & Pruitt's billing records between August 9 and 29, 2010 that refer

to and/or set forth the substance of the communications between Barron & Pruitt attorneys and Ms. Noe.  This includes billing notes pertaining to communications between Barron & Pruitt and Liberty Mutual which discuss the attorney's communications with Ms. Noe.  If Defendant asserts that any of the records contain privileged communications or information, Defendant may submit those portions of the billing records to the Court for *in camera* review, together with an explanation of the basis for the claim of privilege which shall also be provided to Plaintiffs' counsel.  Plaintiffs shall also produce to Defendant any billing records or contemporaneous notes of Ms. Noe between August 9 and 29, 2010 that refer to and/or set forth the substance of her communications with Barron & Pruitt attorneys.  If Ms. Noe does not possess such records or notes, Plaintiffs shall serve a declaration by her so stating.

The Court will deny Plaintiffs' motion to compel production of the transcripts of depositions given by Mr. Hamilton in other lawsuits.  Neither Mr. Hamilton nor Defendant have possession or control of the deposition transcripts and therefore cannot be compelled to produce them.[2]  *See Roberts v. Printup*, 2007 WL 1201461, *1–2 (D. Kan. April 23, 2007) ("The court cannot compel a party to produce documents that are not in his possession or control."); *see also Jefferson v. Delphi Automotive Systems, LLC*, 2015 WL 8479066, *2 (S.D. Tex. Dec. 10, 2015).  Plaintiffs' counsel attempted to obtain the deposition transcripts from the court reporters who prepared them.  The reporters, however, refused to provide them without authorization from the parties or the court in the lawsuits in which the depositions were taken.  Plaintiffs did not serve subpoenas on the parties in other cases to obtain the deposition transcripts.  Nor is there any indication that Plaintiffs contacted those parties to request copies of the depositions.  Finally, to the extent that the depositions are subject to protective orders which preclude their disclosure to third persons, Plaintiffs would have to file motions with the courts that issued the protective orders to obtain release of the transcripts.

Defendant also argues that a party is not entitled to obtain deposition testimony given by an opposing party's expert witness in other litigation.  Although Rule 26(a)(2) does not require the disclosing party to produce transcripts of its expert's prior deposition or trial testimony, it does not preclude a party from obtaining such testimony through other discovery tools such as a subpoena duces

---

[2] Although a Liberty Mutual company is a party in one of the cases, Defendant represents that it is a different and independent corporate entity over which the Defendant has no control.

tecum.  *Expeditors International of Washington, Inc. v. Vastera Inc.*, 2004 WL 406999, *3 (N.D. Ill. Feb. 26, 2004) and *United States v. Bazaarvoice, Inc.*, 2013 WL 3784240, *2–3 (N.D. Cal. July 18, 2013).  Court decisions are somewhat divided, however, as to whether a party is entitled to discover an opposing expert's prior deposition or trial testimony.  *Jefferson v. Delphi Automotive Systems* states that parties are entitled to explore the factual and legal bases of an opposing expert's opinions, including potential inconsistencies between opinions expressed by the expert in the pending litigation with testimony or opinions he has given and the theories or methodologies he has used in prior cases.  2015 WL 8479066, at *2, citing *Expeditors International of Washington, Inc. v. Vastera Inc.*, 2004 WL 406999, at *2.  The court in *Expeditors* ordered the plaintiff to produce transcripts of its expert's prior deposition and trial testimony, and expert reports in similar trade secret cases.  *Id.*  The court in *Quaile v. Carol Cable Company, Inc.*, 1992 WL 277981, *2 (E.D. Pa. Oct. 5, 1992) authorized discovery of an expert's prior testimony on issues that were substantially similar to those in the pending litigation.  In *In re Air Crash Disaster at Stapleton Intern. Airport*, 720 F.Supp. 1442, 1444 (D.Colo. 1988), however, the court stated that "[a] finding that conclusions and opinions offered in unrelated litigation fall within the scope of Rule 26 discovery would unnecessarily burden technical litigation with pre-trial inquiry into facts and issues wholly irrelevant to the case at hand.  Defendant's general contention that they are entitled to develop material to be used during cross-examination does not convince this court to articulate a new general rule favoring burdensome production and discovery."

        Plaintiffs have not shown that Mr. Hamilton's testimony in the three cases involved issues substantially similar to those in this case.  Plaintiffs argue only that Mr. Hamilton may have offered opinions on an insurer's duties that might be used to impeach him in this case. This is a questionable basis upon which to compel production of an expert's prior testimony.  In any event, Plaintiffs failed to diligently pursue production of the deposition transcripts prior to the close of discovery.  Accordingly,

        **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Unredacted Copies of Documents Contained in Defendant's First Supplemental Disclosure Statement Pursuant to FRCP 26 and Copies of Certain Depositions (ECF No. 42) is **granted**, in part, as follows:

        1. Within fourteen (14) days of the filing of this order, Defendant shall produce to Plaintiffs any Barron & Pruitt billing records between August 9 and 29, 2010 that refer to, and/or which set forth the

substance of, communications between Barron & Pruitt attorneys and Ms. Noe.  This includes billing notes pertaining to communications between Barron & Pruitt and Liberty Mutual which discuss the attorney's communications with Ms. Noe.  If Defendant asserts that any of the subject billing records contain privileged communications or information, Defendant may submit those portions of the billing records to the Court for *in camera* review, together with an explanation of the basis for the claim of privilege which shall also be provided to Plaintiffs' counsel.

2.  Within fourteen (14) days of the filing of this order, Plaintiffs shall produce to Defendant any billing records or contemporaneous notes that Plaintiffs' former counsel Anastasia Noe has regarding her communications with Barron & Pruitt from August 9-29, 2010.  If Ms. Noe does not have such records or notes, Plaintiffs shall submit a sworn declaration from her so stating.  Likewise, if Plaintiffs assert that Ms. Noe's records or notes contain privileged communications or information, Plaintiffs may submit those portions of the records or notes to the Court for *in camera* review, together with an explanation of the basis for the claim of privilege which shall also be provided to Defendant's counsel.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to compel production of Defendant's expert witness's testimony given in other cases is **denied**.

DATED this 4th day of November, 2016.

GEORGE FOLEY, JR.
United States Magistrate Judge

12