# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

MELINDA BOOTH DOGRA, as Assignee of Claims of SUSAN HIROKO LILES; JAY DOGRA, as Assignee of the Claims of SUSAN HIROKO LILES,

Plaintiffs,

vs.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

Defendant.

Case No.: 2:14-cv-01841-GMN-GWF

**ORDER**

Pending before the Court is the Motion for Summary Judgment filed by Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual"). (ECF No. 52). Plaintiffs Melinda Booth Dogra and Jay Dogra ("Plaintiffs") filed a response, (ECF No. 64), and Liberty Mutual filed a reply, (ECF No. 68).[1] For the reasons discussed below, Liberty Mutual's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

This case arises from a series of disputes related to a car accident that took place in Clark County, Nevada on August 22, 2008. (Compl. ¶ 10, ECF No. 1). The accident occurred when Susan Hiroko Liles ("Liles") drifted from her lane and collided with an adjacent vehicle, causing injury to multiple individuals, including Plaintiffs in the instant action. (*Id.* ¶ 11). At the time of the accident, Liles was a covered driver on an automobile insurance policy (the

---

[1] In addition, Plaintiffs filed a Motion to Extend Time, (ECF No. 63), and Motion for Leave to File a Supplemental Response, (ECF No. 67). Liberty Mutual responded in opposition, (ECF No. 69), and Plaintiffs filed a reply, (ECF No. 70). For good cause appearing, the Court grants Plaintiffs' motions and considers both the supplement and Liberty Mutual's response.

"Policy") provided by Liberty Mutual. (*See* Policy, Ex. 1 to Def.'s MSJ, ECF No. 25-1). The Policy contained limits of $100,000 per claim and $300,000 per accident. (*Id.*).

On November 25, 2008, Liberty Mutual filed an Interpleader Complaint in Clark County District Court ("Clark County Court"), asserting its position that Liles' potential liability exceeded the policy limits. (*See* Interpleader Compl., Ex. 2 to Def.'s MSJ, ECF No. 25-2). On November 17, 2009, Liberty Mutual filed a Motion for Summary Judgment and Disbursement of Funds. (Interpleader MSJ, Ex. 10 to Pls.' Resp., ECF No. 28-10). In that motion, Liberty Mutual proposed a distribution where one of the injured parties would receive $160,500. (*Id.*). Multiple claimants opposed the motion for suggesting a distribution in excess of the $100,000 per claim policy limit. (*See* Opposition to Interpleader MSJ, Ex. 11 to Pls.' Resp., ECF No. 28-11). The Clark County Court deferred ruling on the motion, as it was unclear at the time whether one of the claimants, Melinda Hespen, should remain a party to the action. (*See* Interpleader Hearings, Exs. 15, 16 to Pls.' Resp., ECF Nos. 28-15, 28-16).

On April 13, 2010, Liberty Mutual filed a Motion to Deposit Funds with the Clark County Court and sought to be discharged from further liability. (Mot. to Deposit, Ex. 3 to Def.'s MSJ, ECF No. 25-3). The Clark County Court granted this motion and directed claimants to agree upon a distribution of the policy proceeds. (Order, Ex. 4 to Def.'s MSJ, ECF No. 25-4). The claimants provided the Clark County Court with an agreed upon distribution on January 6, 2011. (*See* Status Hearing, Ex. 18 to Def.'s Reply, ECF No. 29-18). However, by this time, multiple parties had commenced individual lawsuits against Liles, including Plaintiffs in the instant action. (*Id.*) Ultimately, Plaintiffs received a jury verdict against Liles for $2,945,604.48 in favor of Melinda Booth Dogra and $42,840.75 in favor of Jay Dogra. (Judgements, Exs. 5, 6 to Def.'s MSJ, ECF Nos. 25-5, 25-6).

After discussion with her independent counsel, Liles decided against appealing this verdict, purportedly due to a financial inability to post the approximately $2.9 million appeal

bond and a desire to "move on." (*See* Counsel Email, Ex. 7 to Def.'s MSJ, ECF No. 25-7). On August 4, 2014, Liles assigned all potential rights and claims she had against Liberty Mutual to the Plaintiffs in this action. (Assignment, Ex. 9 to Def.'s MSJ, ECF No. 25-9). Shortly thereafter, Plaintiffs initiated this case in federal court, alleging four causes of action against Liberty Mutual: (1) Breach of Contract; (2) Breach of Duty of Good Faith and Fair Dealing and Fiduciary-like Duties; (3) Breach of Unfair Claims Practices Act; and (4) Punitive Damages. (Compl., ECF No. 1). On September 27, 2017, the Court granted summary judgment on Plaintiffs' breach of contract claim. (ECF No. 44). On October 21, 2016, Liberty Mutual filed the instant Motion seeking summary judgment on Plaintiffs' remaining claims.

## II.     **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

As a preliminary matter, the Court notes that Liberty Mutual predominantly relies on the argument that the Court's prior findings on the breach of contract claim, (ECF No. 44), are dispositive of the remaining bad faith and unfair settlement practices claims. (*See* Def.'s MSJ 2:10–28, ECF No. 52). In response, Plaintiffs assert that the remaining claims present different questions of fact, and "[t]he rulings on the breach of contract motion were confined to the four corners of the contract." (Pls.' Resp. 15:24–27, ECF No. 64). Although the Court recognizes potential overlap between the claims, Plaintiffs are correct that the legal and factual questions presently before the Court are different than when the Court decided the breach of contract issue. Accordingly, while some of the Court's prior findings are determinative, they do not resolve all of the issues presently before the Court.

### A. Unfair Settlement Practices Claim

Liberty Mutual argues that it is entitled to summary judgment on Plaintiffs' unfair settlement practices claim because Plaintiffs have failed to "make a showing sufficient to establish" violations under the Nevada statute. (Def.'s MSJ 10:11–14). NRS 686A.310 proscribes specific actions taken by an insurer that are deemed to be "unfair" when handling claim and settlement matters. Nev. Rev. Stat. 686A.310; *see also Phillips v. Clark Cty. Sch. Dist.*, 903 F. Supp. 2d 1094, 1102–03 (D. Nev. 2012). An insurer need not breach its duties under the insurance contract in order to be liable for unfair claims practices. *See Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010). Under NRS 686A.310, an insurer engages in unfair practice by: (1) misrepresenting to insureds pertinent facts or insurance policy provisions relating to any coverage at issue; (2) failing to acknowledge and act reasonably promptly upon communication with respect to claims arising

under insurance policies; (3) failing to adopt reasonable standards for the prompt investigation and processing of claims arising under insurance policies; and (4) failing to effectuate prompt, fair, and equitable settlements of claims in which liability of the insurer has become reasonably clear. *See* Nev. Rev. Stat. 686A.310. The Court addresses Plaintiffs' unfair settlement practices arguments in turn.

### *a) Appeal Bonds*

Plaintiffs assert that Liberty Mutual engaged in unfair settlement practices by failing to inform Liles of the appeal bonds. With respect to this allegation, the Court has already determined that Liberty Mutual did not have a duty to furnish the appeal bonds under the insurance contract. (Order 7:21–8:14, ECF No. 44). Accordingly, it cannot be said that Liberty Mutual engaged in unfair settlement practices by failing to advise its insured of a right that did not exist. Plaintiffs do not contest this point in the response to the instant Motion. The Court therefore rejects this theory.

### *b) Failure to Investigate the Vehicle and Preserve Evidence*

Plaintiffs next argue that Liberty Mutual fell short of reasonable investigation standards by failing to fully investigate any mechanical defects in Liles' vehicle after the accident and failing to preserve evidence by selling the vehicle at auction. (*See* Pls.' Resp. 8:10–9:16). In support of this theory, Plaintiffs cite to the deposition testimony of an independent vehicle inspector, which states that the inspector only conducted a visual inspection of the rear axle after the accident. (*See* Brian Jones Dep. at 27–29, Ex. 9 to Pls.' Resp., ECF No. 64-9).

Here, the Court finds that Plaintiffs have not raised a genuine issue of material fact. Notably, Plaintiffs provide no evidence to suggest that the independent expert's evaluation of the vehicle was inadequate, much less provide evidence that Liberty Mutual engaged in unfair settlement practices in relying on the independent expert's evaluation. With respect to Plaintiffs' failure to preserve evidence argument, the Court is likewise unpersuaded. Plaintiffs

have not offered any evidence to suggest that Liles ever requested that Liberty Mutual preserve the vehicle. Moreover, given Liberty Mutual's reliance on the independent expert, no reasonable jury could find that Liberty Mutual engaged in unfair settlement practices by selling the vehicle after the full expert inspection.

### c) Dual Representation

Plaintiffs further argue that Liberty Mutual violated NRS 686A.310 by failing to provide an unbiased defense through the use of the same counsel for the interpleader action and the subsequent lawsuit against Liles. (*See* Pls.' Resp. 7:27–8:9). In the instant Motion, Liberty Mutual argues that the Court has already determined that dual representation was appropriate in its prior Order. (*See id.* 7:7–21). Liberty Mutual is correct. Aside from the conclusory assertion that the dual representation created a conflict of interest, Plaintiffs have not provided sufficient evidence to suggest that Liberty Mutuals' use of the same counsel for both actions created biased representation. To the contrary, the Court has already found that Liberty Mutual acted in accordance with Nevada law in allowing joint representation up until the point of a potential conflict, and then retaining independent counsel for Liles once a potential conflict arose. (Order 7:8–20).

### d) Failure to Obtain Medical Data and Timely Deposit Funds

Plaintiffs argue that Liberty Mutual violated NRS 686A.310 by failing to collect medical data on the potential claimants prior to the running of the statute of limitations. (*See* Pls.' Resp. 5:9–6:5). Additionally, Plaintiffs argue that Liberty Mutual violated the statute by failing to deposit the policy limits with the court until after the statute of limitations expired.[2] (*See id.* 7:17–26). In support of these arguments, Plaintiffs cite to deposition testimony of counsel

---

[2] While the Court already ruled on this issue as to the breach of contract claim, Plaintiffs have since provided additional deposition evidence indicating that claimants may have been willing to accept the settlement money if it were deposited prior to the running of the statute of limitations. The Court considers this evidence for purposes of the instant Motion.

involved in the underlying interpleader action, which purportedly demonstrates that Liberty Mutual failed to effectuate prompt communication with opposing counsel throughout the process. (*See* Suppl. Resp., ECF No. 67). Plaintiffs also cite to an "expert report," which analyzes alleged deficiencies in Liberty Mutual's handling of the investigation and interpleader action. (*See* Expert Report, Ex. 6 to Pls.' Resp., ECF No. 64-6). Plaintiffs contend that absent Liberty Mutual's wrongful conduct, the individual lawsuits against Liles could have been avoided. (Suppl. Resp. 6:9–18).

Here, the Court finds that Plaintiffs have provided sufficient evidence to raise a genuine issue of material fact as to whether Liberty Mutual effectuated prompt, fair, and equitable settlements of the claims. *See* Nev. Rev. Stat. 686A.310. In particular, the Court finds Plaintiffs have sufficiently raised issue as to whether Liberty Mutual's handling of the interpleader action resulted in otherwise avoidable individual lawsuits against the insured. Based on the record, and consistent with the foregoing, the Court denies summary judgment on Plaintiffs' unfair settlement practices claim.

**B. Breach of the Covenant of Good Faith and Fair Dealing**

"An implied covenant of good faith and fair dealing is recognized in every contract under Nevada law." *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.,* 971 P.2d 1251, 1256 (Nev. 1998). While the duty arises from the contractual relationship, the law—not the contract itself—imposes the good faith duty on an insurer. *Allstate Insurance Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009). "Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *See American Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354–55 (1986). Accordingly, "a jury question of [an] insurer's bad faith arises when relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of [an] insurer's conduct. *United Fire Ins. Co. v.*

*McClelland*, 780 P.2d 193, 197 (Nev. 1989); *see also Mitchell v. Bailey & Selover, Inc.*, 605 P.2d 1138, 1139 (Nev. 1980) (stating that good faith is a generally a question of fact).

Liberty Mutual argues that it "cannot be liable for bad faith as a matter of law in the absence of a breach of contract. (Def.'s MSJ 6:24–25). In support of this argument, Liberty Mutual relies on a number of cases discussing bad faith in the context of the denial of benefits under an insurance contract. *See, e.g., Henderson v. Prop. & Cas. Co. of Hartford*, No. 2:12–cv–00149–KJD, 2012 WL 3730533, *4 (D. Nev. Aug. 28, 2012); *American Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1355 (Nev. 1986) (finding no basis for bad faith claim against insurance company when denial of benefits was based on reasonable interpretation of the contract).

While certain circumstances may inextricably link a bad faith claim to a breach of contract claim, the Nevada Supreme Court has recognized that the two causes of action exist independently of each other. *See Hilton Hotels Corp. v. Butch Lewis Prods., Inc.,* 808 P.2d 919, 922 (Nev. 1991) (finding bath faith when "the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract."). Here, the cases cited by Liberty Mutual are factually dissimilar from the instant case before the Court. In this case, the issue is not whether Liles was covered under the contract in general. Rather, the issue is whether Liberty Mutual acted reasonably in paying out the claims that *were* undisputedly covered. *See Guaranty Nat'l Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996) (stating that bad faith actions can apply to more than just an insurer's denial of paying a claim); *see also Allstate Ins. Co.*, 212 P.3d at 324–25 ("The right to control settlement discussions creates the duty of good faith and fair dealing during negotiations.").

To this end, the Court finds that Plaintiffs have provided competent evidence to raise a genuine issue of material fact as to the reasonableness of Liberty Mutual's conduct. *United Fire Ins. Co.*, 780 P.2d at 197. Specifically, as explained above, Plaintiffs have raised issue as to

Liberty Mutual's handling of the interpleader action. In the context of a bad faith claim, this issue is factual in nature and properly determined by a jury at trial. *Mitchell*, 605 P.2d at 1139. Accordingly, the Court denies summary judgment on Plaintiffs' Breach of the Covenant of Good Faith and Fair Dealing claim.

**C. Punitive Damages**

As a general rule, punitive damages are a form of relief and not an independent cause of action. *See Ngan Le v. Sentinel Ins. Co.*, No 2:14–cv–00747–APG, 2015 WL 685215, at *2–3 (D. Nev. Feb. 17, 2015); *see also Farris v. Canyon Creek Constr., Inc.*, 367 P.3d 768 (Nev. 2010) ("A claim for punitive damages is not a cause of action"). Here, Plaintiffs raised punitive damages as a separate cause of action in the Complaint. (Compl. ¶ 87). Accordingly, the Court grants summary judgment on this claim as improperly raised.

Even if Plaintiffs properly raised the request, however, the Court finds that Plaintiffs have failed to provide sufficient facts to support an award of punitive damages. In order to receive an award for punitive damages, a plaintiff must demonstrate by clear and convincing evidence that the defendant is guilty of oppression, fraud, or malice, either express or implied. N.R.S. § 42.005(1). This standard requires that the plaintiff produce evidence "so clear as to leave no substantial doubt[,]" *Wynn v. Smith*, 16 P.3d 424, 431 (Nev. 2011), that the defendant "acted with a culpable state of mind[,]" *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 255 (Nev. 2008).

Here, Plaintiffs argue that "if there is evidence of fraud, oppression or malice, Plaintiffs should be permitted to request punitive damages at the trial." (Pls.' Resp 15:13–19). Plaintiffs' reference to theoretical evidence not provided to the Court is insufficient to allow a request for punitive damages to survive summary judgment. Beyond conclusory assertions, Plaintiffs have failed to proffer any evidence of malice or oppression by Liberty Mutual. Further, there is no evidence that Liberty Mutual acted with intent to vex or injure. The Court therefore finds

Plaintiffs are not entitled to punitive damages. *See Pioneer Chlor Alkali Col, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 863 F. Supp. 1237, 1252 (D. Nev. 1994) (denying punitive damages as a matter of law where plaintiff failed to raise an issue of material fact as to oppression, fraud, or malice).

### D. Motion to Reconsider Breach of Contract Claim

Plaintiffs seek reconsideration of the Court's Order granting summary judgment in favor of Liberty Mutual on Plaintiffs' breach of contract claim. (ECF No. 55). Specifically, Plaintiffs seek reconsideration of the Court's finding that "Plaintiffs have not sufficiently demonstrated that depositing the funds [in the interpleader action] sooner would have prevented the separate judgments against Liles." (*Id.*). Plaintiffs contend that reconsideration is warranted due to newly discovered evidence that was not previously available.

Without commenting on the merits, the Court finds good cause to grant Plaintiffs' Motion for Leave to File a Motion for Reconsideration. Plaintiffs shall have ten (10) days from the issuance of this Order to file their Motion for Reconsideration as a separate motion on the docket. Liberty Mutual shall have fourteen (14) days thereafter to file a response, and Plaintiffs shall have seven (7) days following the response to file a reply.

## IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Liberty Mutual's Motion for Summary Judgment, (ECF No. 52), is **GRANTED in part and DENIED in part** consistent with the foregoing.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Extend Time, (ECF No. 63), and Motion for Leave to File a Supplemental Response, (ECF No. 67), are **GRANTED**.

///

///

///

///

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Motion for Reconsideration, (ECF No. 55), is **GRANTED**. Plaintiffs shall have ten (10) days from the issuance of this Order to file their Motion for Reconsideration as a separate motion on the docket.

**DATED** this \_\_19\_\_ day of September, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge